IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANGEL L. G.,

                        Plaintiff,

        v.                                    Civil Action No.
                                              5:22-CV-1160 (LEK/DEP)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                   Defendant.

_____

<u>APPEARANCES</u>:                          <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

LAW OFFICES OF                               JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC
6000 North Bailey Ave, Suite 1A
Amherst, NY 14226

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.                       HEETANO SHAMSOONDAR, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. § 405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance benefits ("DIB") for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in August of 1977, and is currently forty-six years of age. She was thirty-seven years old on November 1, 2014, the date she allegedly became disabled, and forty-two years old as of December 31, 2019, the date she was last insured for benefits under Title II ("DLI"). Plaintiff measures five feet and one inch in height, and weighed approximately one hundred and ninety-three pounds during the relevant period. She lives with her husband and children in Baldwinsville, New York.

Plaintiff reports that she has a high school diploma. In the past, she

worked most relevantly as a mail carrier for the United States Postal Service.

Plaintiff alleges that she suffers from a variety of physical impairments, including pain in her hip, a history of transient ischemic attacks ("TIA") or strokes that have left her with weakness on the right side of her body, a heart attack with placement of a mechanical heart valve, and a history of kidney failure. As is relevant to her application for benefits, plaintiff has treated for her impairments with primary care physician Dr. John Michaels, and sources at Associated Medical Professionals of New York, Syracuse Orthopedic Specialists, Crouse Hospital and Medical Practice, Strong Memorial Hospital, St. Joseph's Hospital Health Center, Upstate University Medical Center, SMH Nephrology, and Dr. Hassan Shukri at CNY Neurological Consulting.

At the administrative hearing related to her application for benefits, held on October 26, 2020, plaintiff testified that a tear in one of the ligaments of her right hip causes pain that makes it difficult for her to stand, walk, or sit for prolonged periods of time. She stated that she is not a surgical candidate for that condition because of her weight, other health conditions, and her use of blood-thinning medications. Plaintiff testified that she also has difficulty carrying items with her right hand due to the effects

of a stroke, with lifting her left arm over her head due to shoulder pain associated with her heart condition and treatment, and with bending and kneeling due to her hip pain.  She also reported difficulty with memory and thinking that she believes is related to a blood clotting condition, as well as fatigue and tiredness.  As to daily activities, plaintiff testified that she attends doctor's appointments once or twice per week, feeds her children and helps them with homework, and does housework on the days her mother-in-law is not around to help.  She also stated that she was able to attend school functions for her children prior to the Covid-19 pandemic.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on May 2, 2018, alleging disability due to underdeveloped hips, a stroke, weakness on the right side of her body, a heart attack with placement of a mechanical valve, and kidney failure without dialysis. Administrative Law Judge ("ALJ") John Loughlin held an administrative hearing to address plaintiff's application for benefits on October 26, 2020, following which he issued a decision on November 19, 2020, finding that plaintiff was not disabled, and therefore not entitled to the benefits for which she had applied.  On September 8, 2022, the Social Security Appeals

Council ("Appeals Council") denied plaintiff's request for review of the decision, making that decision the final determination of the Commissioner.

B.    The ALJ's Decision

In his decision, ALJ Loughlin applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period.  ALJ Loughlin next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including cervical spine degenerative disc disease; left shoulder disorders including arthritis, impingement, scapular dyskinesia, and rotator cuff tendinopathy; right hip disorders including a labral tear and congenital dislocation; obesity; allergic rhinitis; a headache disorder; chronic kidney disease; and cardiovascular disorders, including coronary artery disease, an acute type A aortic dissection, acute blood loss anemia, atrial fibrillation/palpitations, heart failure, and status post open heart surgery and placement of a mechanical aortic valve and aortic graft. As part of his step two finding, ALJ Loughlin also found that plaintiff's alleged TIA/stroke, gastroesophageal reflux disorder, hyperlipidemia, hyperglycemia, hypokalemia, type 2 diabetes mellitus, dysfunctional bleeding, lumbosacral radiculitis, vitamin D deficiency, osteitis pubic, pelvic

calcifications, recurrent acute serous otitis media of both ears, patent

foramen ovale,[1] daytime hypersomnolence, obstructive sleep apnea, acute

cystitis without hematuria, acute sinusitis, urinary tract infection, stress

incontinence, other adverse food reactions, a closed head injury, and

affective and anxiety disorders do not constitute severe impairments.

At step three, ALJ Loughlin examined the governing regulations of

the Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of the listed

conditions set forth in those regulations, specifically considering Listings

1.02, 1.04, 3.02, 4.02, 4.04, 6.05, 6.09, 7.18, 11.02, and 11.14, as well as

Social Security Ruling ("SSR")19-2p, related to obesity.

ALJ Loughlin next surveyed the available record evidence and

determined that plaintiff retains the residual functional capacity ("RFC") to

perform a range of work at the sedentary exertional level, as defined by the

controlling regulations, with the following exceptions:

> she can occasionally push, pull, and/or reach
> overhead with the left upper extremity, can
> occasionally balance, stoop, kneel, crouch, and
> crawl, can occasionally climb stairs and ramps, can

---

[1]      This is defined as a hole between the upper chambers of the heart. *See Patent Foramen Ovale*, National Institute of Health National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK493151/.

never climb ladders, ropes, and scaffolds, and can occasionally be exposed to vibrations, unprotected heights, and moving machinery parts. The claimant requires a moderate noise work environment, as defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations, and can have occasional exposure to dust, noxious odors and fumes, poor ventilation, extreme cold, and extreme heat. She can understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions.

ALJ Loughlin went on to step four and found that plaintiff is unable to perform her past relevant work as a rural mail carrier. The ALJ then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing the representative positions of toy stuffer, eye glass frame polisher, and loader of semiconductor dyes. Based upon these findings, ALJ Loughlin determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on November 7, 2022.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that (1) the ALJ

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

failed to support his RFC findings with substantial evidence, particularly

regarding the need to alternate positions between sitting and standing and

the nonexertional limitations caused by her pain, and (2) the ALJ erred in

relying on the testimony of the vocational expert because of his failure to

resolve a conflict between that testimony and the Dictionary of

Occupational Titles ("DOT").  Dkt. No. 9

Oral argument was conducted in this matter, by telephone, on

September 14, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

8

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting

as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.

Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level

constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>The ALJ's RFC Assessment</u>

Plaintiff first asserts that the ALJ failed to support his RFC determination with substantial evidence, arguing specifically that the ALJ (1) failed to adequately explain his choice to reject a limitation for alternating positions between sitting, standing, and walking at will despite the opinion evidence substantiating such a limitation, and (2) failed to adequately explain his rejection of the nonexertional limitations related to pain expressed in the opinion from treating physician Dr. Michaels.  Dkt. No. 9.

        a.    <u>Alternating Positions</u>

In a treatment record dated February 8, 2018, orthopedist Dr. Michael Clarke indicated that he thought it would be appropriate for plaintiff to return to "sedentary or office work," with specific limitations of sitting and standing at will, pushing under fifty pounds, and lifting twenty pounds or less.

Administrative Transcript ("AT") at 387.[3]  It was noted that this opinion was made in the context of plaintiff's first visit with Dr. Clarke's office after an absence of a year-and-a-half.  *Id.*  Similarly, in a medical source statement dated July 16, 2020, treating primary care physician Dr. John Michaels opined, as is relevant to this portion of plaintiff's argument, that plaintiff can sit or stand for only twenty minutes at one time, would need to shift positions at will, and would need to walk around for ten minutes every twenty minutes.  AT 2888-89.

Plaintiff argues that, because these sources opined a need for him to alternate positions, and because no other medical source offered a contrary opinion that he could perform sedentary work without such position changes, the ALJ's failure to include a limitation for changing positions in the RFC is error in that it is not supported by substantial evidence.  Dkt. No. 9, at 13-20.  As plaintiff herself acknowledges, however, the ALJ provided an explicit explanation for declining to adopt the need to change positions opined by Dr. Clarke, stating that "the above described evidence, and the record as a whole, does not support the conclusion that the claimant's capacity to sit is so limited that she would

---

[3]     The administrative transcript is found at Dkt. No. 8, and will be referred to throughout this decision as "AT __."

require the option of  shift [sic] from that position outside of customary breaks, much less at will," noting also that "[n]o or virtually no treating or examining provider has observed her to be uncomfortable while sitting." AT 25.  Plaintiff argues that this explanation is conclusory.  Yet, that position ignores the fairly significant discussion of the evidence related to plaintiff's various impairments by the ALJ in the preceding portion of his decision, a discussion to which the ALJ explicitly referred as a basis for his finding.  Further, although plaintiff argues that the ALJ erred in relying on a lack of observations by providers of difficulty sitting or needing to change positions, she also provides no other evidence to support her contention that the ALJ was required to accommodate a need to alternate positions, other than her own subjective reports, which the ALJ indicated he found not to be wholly supported by the evidence.  Although the absence of evidence is not evidence of absence, it was still plaintiff's burden to show that she is limited to the extent she alleges, and I agree with the ALJ that the evidence does not document findings that suggest a need to shift positions at will.

As to Dr. Michaels' opinion, although it is true that the ALJ did not provide an explanation specifically addressing the opined limitation regarding alternating positions, it is clear from the ALJ's discussion of that opinion that he found it to be unpersuasive essentially in total, and

therefore the reasons he provided generally can be inferred as applying to that specific limitation.  AT 26.

Plaintiff argues that it was error for the ALJ to rely on findings of normal or steady gait for rejecting the need to change positions, pointing out that there were some instances in which she was observed to have an antalgic gait.  That contention, however, represents little more than a request to reweigh the evidence, given that I do not see any indication that the ALJ's failure to discuss certain evidence within the paragraph where he analyzed this opinion represents a failure to consider that evidence.  *See Sharon A. H. v. Comm'r of Soc. Sec.*, 20-CV-1014, 2022 WL 3141718, at *7 (N.D.N.Y. Apr. 22, 2022) (Peebles, M.J.) (noting that "the ALJ was not required to discuss every piece of evidence in order to show that it had been considered, not does the ALJ's failure to provide a more detailed discussion of the evidence precent meaningful review" where the evidence of record permits the court to glean the ALJ's rationale) (citing *Brault*, 683 F.3d at 448).  I also note that the ALJ cited not only to observations of normal gait, but also to plaintiff's own reports in the record and at the hearing that she walks for exercise.  AT 26.

I note, moreover, as was discussed above, that the ALJ included a detailed discussion of the evidence in his decision that must also be

considered, as his decision must be read as a whole. In that discussion, the ALJ acknowledged both the normal and abnormal findings related to plaintiff's hip in particular, including instances of antalgic gait, diffuse tenderness, range of motion limited by pain, and positive impingement tests, but also noted that there was no apparent treatment for her hip after early 2018, and explained how the evidence in the record led him to include certain limitations in the RFC. AT 22. All of this discussion of the evidence provides further context for the ALJ's finding that Dr. Michaels' opined limitation for alternating positions is unpersuasive.

Based on my own review of the record, I find no error in the ALJ's finding that such a limitation is not warranted. Although it is true that the record does document some notations of antalgic gait, particularly in 2015 and 2016, AT 386, 398, 402, 406, there are also many occasions where plaintiff's gait was noted to be normal. AT 410, 416, 2298, 2323, 2338, 2700. Nor is there any evidence in the medical treatment records to substantiate a need to change positions, as the ALJ stated; there are no observations of discomfort sitting, and even few-to-no reports to her providers regarding difficulty with sitting for long periods of time. Simply put, I see nothing to suggest that the ALJ's assessment of the evidence in the record was unduly selective or unreasonable.

Further, I note that, although the opinions from the non-examining state agency medical consultant Dr. R. Abueg and consultative examiner Dr. Richard Weiskopf did not necessarily find that plaintiff should be limited to sedentary work, it is notable that those sources did not deem a limitation for alternating positions to be warranted.  AT 2113.  Dr. Abueg opined that plaintiff can sit for "about 6 hours in an 8-hour workday," and can stand and/or walk for four hours.  AT 59.  Dr. Weiskopf found that plaintiff was not limited in her ability to sit or stand.  AT 2113.  Although the ALJ did not adopt either of those opinions in total, the fact that they did not include any limitation for alternating positions undermines plaintiff's argument that the ALJ's rejection of such a limitation was based wholly on his own lay opinion of the evidence.  I note in particular that the ALJ found Dr. Abueg's opinion only somewhat persuasive in terms of exertional functioning, but specifically stated that greater limitations were warranted on the basis of plaintiff's cardiac impairment.  Given that it is not clear how plaintiff's cardiac impairment would cause her to be unable to remain seated for long periods of time, the fact that the ALJ found plaintiff to be more limited than opined by Dr. Abueg does not inherently suggest that he was required to accept the need for alternating positions as opined by the other physicians despite Dr. Abueg's choice not to include such a limitation.

Based on the foregoing, I find no error in the ALJ's rejection of a limitation for alternating positions.

b.     Dr. Michaels' Opinion

In his opinion, Dr. Michaels opined that plaintiff had diagnoses of palpitations, atrial fibrillation, and "CVA" which cause chronic pain/parasthesia, fatigue, shortness of breath, and chest pain.  AT 2788. Dr. Michaels opined that plaintiff's pain and other symptoms would interfere with her attention and concentration to perform even simple work more than thirty-percent of the workday.  *Id.*  He further opined that she can sit for twenty minutes at one time and less than two hours in an eight-hour workday, stand for twenty minutes at one time and less than two hours in an eight-hour workday, would need to shift positions at will, and would need to walk around for ten minutes at a time every twenty minutes.  AT 2789. He opined that plaintiff can rarely lift even less than ten pounds, rarely look up or down, rarely twist, stoop, and climb stairs, never crouch, squat, or climb ladders, and can use her hands only twenty-five percent of the workday and her arms for reaching only five percent of the workday.  AT 2789-90.  Lastly, he opined that plaintiff would require unscheduled breaks every two hours for fifteen minutes to lie down and rest her head on a high-backed chair.  AT 2789-90.

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[4] and consistency[5] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or

---

[4]    On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[5]    On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

Plaintiff asserts that the ALJ erred in rejecting the various other limitations included in Dr. Michaels' opinion, arguing in a fairly conclusory manner that the ALJ failed to explain the reasons why those limitations – particularly the limitations related to off-task time and absences – are inconsistent with her pain and the residual effects of her cardiovascular impairment.  Dkt. No. 9, at 20-23.  In making this argument, plaintiff cites again to notations of antalgic or abnormal gait, as well as a single examination from neurologist Dr. Hassan Shukri from November 2018 and an MRI report showing a chronic infarct or remote trauma and chronic small vessel ischemic disease.  Dkt. No. 9, at 20-21.  To the extent that plaintiff is asserting that these few pieces of evidence suggest a failure of the ALJ's analysis of Dr. Michaels' opinion, once again that represents merely a request to reweigh the evidence.  *See Shyla D. v. Kijakazi*, 20-CV-1295,

2022 WL 798158, at *3 (N.D.N.Y. Mar. 16, 2022) (Stewart, M.J.) (collecting cases). I also note that plaintiff has not explained how she believes the findings in Dr. Shukri's examination, such as slight left sided weakness and diminished vibration sensation in the feet, are supportive of the specific limitations included in Dr. Michaels' opinion, beyond the fact that they show various abnormalities. AT 2337-38.

Plaintiff additionally appears to argue that the ALJ failed to properly consider the regulatory factors of consistency and supportability when evaluating Dr. Michaels' opinion, asserting that the ALJ instead relied solely on the fact that there were findings of normal or steady gait. Dkt. No. 9, at 21-22. However, plaintiff's argument ignores the fact that the ALJ's decision must be read as a whole. *See Carol C. v. Comm'r of Soc. Sec.*, 21-CV-0862, 2023 WL 2664430, at *5 (N.D.N.Y. Mar. 28, 2023) (Dancks, M.J.) (collecting cases). The ALJ specifically noted as part of his assessment of Dr. Michaels' opinion that he found the exertional limitations in that opinion to be "without any support in the above-described evidence, the written record as a whole, and the claimant's own testimony." AT 26. As to the postural, manipulative, off-task, and absence limitations, which appear to be the subject of plaintiff's challenge, the ALJ found that those limitations are not consistent with the record, and do not have significant

support in his own treatment notes, "which reflect better exertional, postural, manipulative, and environmental functioning than does most of the above cited evidence."  AT 26.

As was discussed to some extent previously, the ALJ thoroughly discussed the relevant medical evidence in an earlier portion of the decision, and specifically stated why he believed that evidence supported the limitations included in the RFC finding.  That discussion must be considered in conjunction with the statements made related to Dr. Michaels' opinion, and I find that they provide the details related to his finding that Dr. Michaels' opinion is not consistent with the evidence in the record.  Further, although the ALJ's discussion of the content of Dr. Michaels' treatment records is admittedly not specific or detailed, he has nonetheless provided a clear indication of how he interpreted the findings within those records, and I can discern nothing within those that would appear to contradict the ALJ's interpretation.  *See generally* AT 2115-20, 2493-2538.  I also note that the only written explanations provided in the opinion form itself are notations that plaintiff has diagnoses of heart palpitations, atrial fibrillation, and CVA, with symptoms of fatigue, shortness of breath, and chest pain.  AT 2788.  However, these symptoms themselves are not supported by Dr. Michaels' own treatment notes on any

consistent basis.  Because plaintiff has not pointed to any evidence within

Dr. Michaels' treatment notes that would suggest the ALJ's brief

explanation of the supportability factor is inadequate, I find that the ALJ has

sufficiently assessed the relevant factors of consistency and supportability

to permit meaningful judicial review and to show that his findings regarding

Dr. Michaels' medical source statement are supported by substantial

evidence.

Based on the foregoing, I find that the ALJ has not traversed the

governing regulations when assessing the opinion of Dr. Michaels, and

recommend that the ALJ's findings in that respect be upheld.

### 2.   The ALJ's Step Five Finding

Plaintiff additionally argues that the ALJ's step five finding is not

supported by substantial evidence because the ALJ failed to resolve an

apparent conflict between the vocational expert's testimony, on which he

ultimately relied, and the DOT, specifically related to the ability to perform

the identified jobs despite the limitation included in the RFC determination

restricting plaintiff to only occasional overhead reaching with the left arm.

Dkt. No. 9, at 23-25.  Plaintiff argues that this error is materially harmful

because it could result in the elimination of one of the identified jobs, and

would not leave a significant number of other jobs to support the ALJ's

ultimate conclusion at step five.  *Id.*

Despite plaintiff's argument to the contrary, as the Commissioner states in her motion, the vocational expert did in fact indicate how such conflict was resolved.  Specifically, after providing testimony related to the ALJ's first hypothetical question, which involved a similar RFC finding but limited to light work, the vocational expert testified that his answer had been consistent with the DOT "with the exceptions of the opinions regarding the impact of the reduction on standing and walking, *as well as the overhead reaching.  Those are not addressed by the DOT and are based on experience and training*."  AT 50 (emphasis added).  When answering the specific hypothetical that mirrored the RFC, the vocational expert stated that his identifications of the three relevant jobs "are consistent with the DOT with the exceptions noted previously."  AT 51.  The vocational expert therefore testified that, although the limitation for left overhead reaching is not addressed by the DOT, his opinion that plaintiff could perform the three jobs with such limitation is based on his experience and training.  An ALJ's reliance on a vocational expert's experience to explain a conflict with the DOT has been routinely upheld as sufficient.  *See Michael R. v. Comm'r of Soc. Sec.*, 19-CV-6836, 2021 WL 346365, at *9 (W.D.N.Y. Feb. 2, 2021) (noting vocational expert's experience was

24

sufficient in a case involving overhead reaching with one of the claimant's upper extremities); *see also Maria A. R. v. Kijakazi*, 21-CV-0290, 2022 WL 2954376, at *12 (N.D.N.Y. July 26, 2022) (Peebles, M.J.); *Abar v. Colvin*, 15-CV-0095, 2016 WL 1298135, at *11 (N.D.N.Y. Mar. 31, 2016) (Suddaby, C.J.).

In his decision, the ALJ stated that, [p]ursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the [DOT], and that the expert permissibly relied on her relevant education and professional experience to assess the vocational impact of limitations, or combinations thereof, not addressed in the DOT." AT 27. The fact that the ALJ did not specifically mention the existence of the conflict regarding overhead reaching does not negate the fact that he explicitly considered whether conflicts existed and reconciled any such conflicts by relying on the vocational expert's testimony that deviations in his opinion were based on his professional experience.

Plaintiff additionally argued, in a brief manner in her initial brief and with more elaboration at the oral argument hearing, that the job of toy stuffer either does not actually exist in the modern American work economy or at least does not exist at the significant numbers identified by the VE in this case. However, neither of these arguments is persuasive. Plaintiff's

representative did not present any arguments or evidence to the ALJ, either at or following the relevant administrative hearing at which VE testimony was taken, regarding any such alleged deficiency in the VE's testimony. Nor does plaintiff present any such evidence now to this court. Rather, plaintiff's argument is premised on two cases – one for each of her propositions – from another court within this circuit. In one of those cases, it is merely noted, when summarizing the VE's testimony in that case, that the VE had found there were approximately 4,000 toy stuffer jobs in the national economy. *Garcia v. Comm'r of Soc. Sec.*, 20-CV-7539, 2022 WL 1051134, at \*3 (S.D.N.Y. Jan. 31, 2022). Yet this decision does not provide any indication as to what data the VE in that case relied on to provide that opinion, or why any such data was more reliable than that on which the VE in this case based the relevant numbers. The fact that a VE came to a different conclusion in a different case, without any ability to examine and compare the basis for his or her testimony, does not provide persuasive evidence that the VE in this case was so patently wrong when providing contrary testimony as to require a finding that the ALJ could not have relied upon it. Further, in the case plaintiff cites for the proposition that the toy stuffer job is obsolete or no longer exists in the modern American economy, although that court expressed some reservations in

that respect, it is notable that it nonetheless still found that the ALJ was permitted to rely on the VE's testimony that significant numbers of jobs existed and that the step five finding there was supported by substantial evidence. *Maldonado v. Comm'r of Soc. Sec.*, 21-CV-7594, 2023 WL 243617, at *10-11 (S.D.N.Y. Jan. 18, 2023). Indeed, much like in that case, "[t]he record before the Court [here] provides no basis to further examine these seeming deficiencies in the Administration's means of determining whether a significant number of jobs exist." *Maldonado*, 2023 WL 243617, at *11. Because there is no evidence in the record to suggest the VE's testimony was erroneous, plaintiff's arguments regarding the numbers provided by the VE related to the toy stuffer position should be rejected.

For these reasons, I find that the ALJ has not committed any error at step five and recommend that the Commissioner's decision be affirmed.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 17) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    September 29, 2023
          Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge